SIMEON AUGUSTUS WOOTEN, SR. v. JOSEPH L. RUSSELL
AND
SIMEON AUGUSTUS WOOTEN, JR., BY HIS NEXT FRIEND, JENNIE LANE
WOOTEN v. JOSEPH L. RUSSELL.

(Filed 22 November, 1961.)

**1. Automobiles § 17—**

The failure of a motorist along a servient highway to yield the right of way to through traffic on a dominant highway is not negligence *per se* but is evidence of negligence and, when the proximate cause of a collision with a motorist entering the intersection along the dominant highway, is sufficient to support a verdict in favor of the motorist traveling along the dominant highway. G.S. 20-158.

**2. Same—**

The driver along the servient highway is required not only to stop before entering an intersection with a dominant highway but also to exercise due care to see that he may enter or cross the dominant highway in safety before entering thereon, and a motorist along a dominant highway is not under duty to anticipate that the motorist along the servient highway will fail to stop, but in the absence of anything which gives or should give notice to the contrary, may assume and act upon the assumption, even to the last minute, that the motorist along the servient highway will stop.

**3. Negligence § 26—**

Nonsuit may not be entered on the ground of contributory negligence unless plaintiff's evidence establishes contributory negligence as the sole reasonable inference, and nonsuit may not be entered upon this ground if differing and conflicting inferences can be drawn from the evidence.

**4. Automobiles § 42g— Evidence held insufficient to establish contributory negligence as a matter of law on the part of motorist entering intersection from a dominant highway.**

Where plaintiff's evidence tends to show that he was traveling at a lawful speed along a dominant highway, that he was a half block from an intersection with a servient highway when he saw defendant's vehicle approaching along the servient highway while it was some quarter of a block away from the intersection, that defendant's vehicle appeared to be stopping, that plaintiff decreased his speed, that the vehicles reached the intersection at approximately the same instant, and that plaintiff drove into the intersection in reliance on his assumption that defendant would stop, and upon first apprehending that a collision was imminent, turned to his right but did not have time to apply brakes or avoid the collision, *is held* not to establish contributory negligence as a matter of law on the part of plaintiff, defendant's evidence in conflict therewith, which was sufficient to take the case to the jury on defendant's cross-action, not being considered upon the motion to nonsuit plaintiff's case.

APPEAL by plaintiffs from *Phillips, J.,* March Civil Term 1961 of WILSON.

This litigation grows out of a collision of automobiles at the intersection of Vance and Bynum Streets in Wilson about 11:45 p.m. on 1 July 1960. Plaintiff Wooten, Sr., is the owner of a Mercury automobile kept as a family purpose car. At the time of the collision it was being operated by his son, plaintiff Wooten, Jr.

The Mercury car was traveling west on Vance Street. Defendant, owner and operator of a Chrysler automobile, was traveling north on Bynum Street. Vance is the dominant, Bynum the servient, street. This fact is indicated to operators of motor vehicles by stop signs on Bynum Street. In addition to the stop signs there is an overhead light in the center of the intersection. It flashes a red light to travelers on Bynum and a yellow light to those on Vance.

The father, alleging negligent operation of defendant's motor vehicle, brought his action for damages to the Mercury. The son sued for personal injuries sustained in the collision.

Defendant denied he was negligent. As an additional defense and for affirmative relief he pleaded the negligence of Wooten, Jr.

Plaintiffs replied to the counterclaim, denying negligence in the operation of the Mercury, and as an additional defense pleaded negligence of defendant as alleged in the complaints.

The cases were consolidated for trial. At the conclusion of plaintiffs' evidence, defendant's motion for nonsuit was allowed. Issues arising on defendant's counterclaim and the replies were submitted to the jury. The jury returned a verdict in conformity with defendant's contention. Judgment was entered on the verdict. Plaintiffs appealed.

*Ruark, Young, Moore & Henderson and Moore & Moore for plaintiff appellants.*

*Lucas, Rand & Rose and Critcher & Gurganus for defendant appellee.*

RODMAN, J.  The first question for determination is: Should defendant's motion for nonsuit have been allowed? Young Wooten testified that defendant did not stop at the intersection as commanded by the stop signs. While a failure to stop and yield the right of way to traffic on the dominant highway is not negligence *per se,* G.S. 20-158, it is evidence of negligence, *S. v. Sealy,* 253 N.C. 802, 117 S.E. 2d 793; *Jordan v. Blackwelder,* 250 N.C. 189, 108 S.E. 2d 429; *Johnson v. Bell,* 234 N.C. 522, 67 S.E. 2d 658; and, when the proximate cause of injury, is sufficient to support a verdict for plaintiff.

Defendant in his brief does not contend there was no evidence of his negligence. He insists the nonsuit was properly allowed because plaintiffs' evidence establishes his negligence contributing to the collision and the resulting damages. If so, it must be established by evidence from which only that inference can be drawn. If differing and conflicting inferences can be drawn, the jury must do so.

The law applicable to motorists on dominant and servient highways when approaching an intersection has been stated in numerous cases. It is said in *Peeden v. Tait,* 254 N.C. 489, 119 S.E. 2d 450: "The rule in this State is that the operator of an automobile traveling upon a main or through highway and approaching a cross-over or an intersection is under no duty to anticipate that the operator of an automobile approaching such intersection will fail to stop or yield to traffic on the main or through highway and, in the absence of anything which gives or should give notice of the contrary, he will be entitled to

assume and to act upon the assumption, even to the last minute, that the operator of the automobile on the intersecting highways or crossover will stop before entering such highway."

It is said in *Jordan v. Blackwelder, supra:* "This latter statute (G.S. 20-158) not only requires the driver on the servient highway or street to stop, but such driver is further required, after stopping, to exercise due care to see that he may enter or cross the dominant highway or street in safety before entering thereon." *Williamson v. Randall,* 248 N.C. 20, 102 S.E. 2d 381; *Jackson v. McCoury,* 247 N.C. 502, 101 S.E. 2d 377; *Caughron v. Walker,* 243 N.C. 153, 90 S.E. 2d 305; *Smith v. Buie,* 243 N.C. 209, 90 S.E. 2d 514; *Loving v. Whitton,* 241 N.C. 273, 84 S.E. 2d 919; *Marshburn v. Patterson,* 241 N.C. 441, 85 S.E. 2d 683.

Plaintiff's evidence fixes his speed at "about 35" m.p.h. It is not suggested that such a speed is unreasonable or prohibited. Plaintiff testified: "When I got about a half a block from the intersection of Vance Street and Bynum Street I saw the lights of the vehicle approaching so I took my foot off of the gas, instinctively, kind of, and as I approached the intersection he appeared to be stopping. He appeared to be stopping but he didn't stop and came on up there and I didn't have time to hit the brakes at all so I turned to the right to try to avoid the collision but as I turned, I turned kind of into the other street and as I turned in there I was struck on the left fender by Mr. Russell's car." Plaintiff and defendant each knew of the stop signs on Bynum Street.

Defendant testified that he was traveling about 10 m.p.h. If that be true and plaintiff's estimate of his speed and the approximate distance of the two automobiles from the intersection when first visible to each other is accurate, it is apparent that they would reach the intersection at approximately the same instant.

Plaintiff also said: "I saw the lights of the Russell car when I was about a half a block away from the intersection. I don't know how far I was when I saw the car. The Russell car was approaching the intersection but I couldn't see too far back up in the intersection. The Russell car was about a fourth of a block away from the intersection. I guess I was about a half a block away, yes sir. The Russell car appeared to be about a fourth of a block away from the intersection of Bynum Street when I first saw it. There is a house that is located in that intersection corner on the southeast that is very near the street line. I never did put on brakes. . . . I saw it coming out into the street and I knew I didn't have time to hit the brakes then. I saw it come out into the street. I didn't really have time to think exactly what I was going to do so I just turned right the first chance, the first time I saw there was going to be a collision."

True, defendant's version differs from that of plaintiff. He testified that he stopped at the intersection, looked down Vance Street, and seeing no traffic approaching, proceeded into the intersection, and when half or more than half way across the intersection, was struck by plaintiff, who was traveling at a speed estimated to be 55 m.p.h. But this differing picture painted by defendant requires a factual determination by a jury.

The court erred in allowing defendant's motion for nonsuit. It ruled correctly in refusing to nonsuit defendant's counterclaim.

Plaintiffs assign as error portions of the charge, but as they are entitled to a new trial on the issues raised by the pleadings, it is not necessary to discuss the asserted errors not apt to occur in another trial.

New trial.